UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NIGEL NYAMAZANA b/n/f MIKE NYAMAZANA | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:14-cv-00397-SEB-DML |
| BELGARDE PROPERTY SERVICES, INC. d/b/a MARINER'S VILLAGE APARTMENTS and BRANDI YOUELL | ) ) ) ) ) | |
| Defendants. | ) | |

## Order Granting Motion to Amend and Remand

This matter is before the court on a motion by plaintiff Nigel Nyamazana to file an amended complaint to name Jessica Rediske as a defendant in place of the current defendant, Brandi Youell, and to remand this case because Ms. Rediske shares citizenship with the plaintiff, preventing the court from exercising diversity jurisdiction. (Dkt. 17). Defendant Belgarde Property Services, Inc. d/b/a Mariner's Village (Belgarde) opposes the motion, maintaining that Ms. Youell was fraudulently joined as a defendant, as would be Ms. Rediske.[1]

## Background

This suit arises out of Mr. Nyamazana's near drowning in a swimming pool at an apartment complex owned by defendant Belgarde. On February 11, 2014, the plaintiff sued Belgarde, a Minnesota Corporation, and Brandi Youell, a citizen of

---

[1] The parties have consented to the magistrate judge deciding this motion. (Dkt. 23).

1

Indiana, in Marion Superior Court. Mr. Nyamazana is an Indiana citizen. His complaint alleges that Belgarde was negligent in its operation, maintenance, and supervision of the pool and that its negligence caused him to suffer severe and permanent injuries. (Complaint, Dkt. 1-1, Count I, ¶ 6). As to Ms. Youell, the complaint alleges that she was a manager at the apartment complex, that she was negligent "in her duties to assist in the management" of the swimming pool, and that her negligence led to the plaintiff's injuries. (*Id.* Count II, ¶¶ 3-6).

Belgarde removed the case to this court on March 14, 2014, based on the court's diversity jurisdiction, asserting that Ms. Youell, the non-diverse defendant, was fraudulently joined because the plaintiff did not, and cannot, allege that Ms. Youell took any direct action "as she was not an employee of Belgarde, nor was she present, at the time of Plaintiff's incident." (Dkt. 1, ¶ 9).

Mr. Nyamazana agrees that his claim against Ms. Youell has no possibility of success because she was *not* the manager of the apartment complex at the time of the injury (though he originally believed her to be so). Based on that concession, the court is satisfied that this case was properly removed because Ms. Youell's citizenship can be ignored under the fraudulent joinder doctrine. Mr. Nyamazana and Belgarde are diverse in citizenship and the amount in controversy satisfies 28 U.S.C. § 1332. The court therefore has subject matter jurisdiction and will address the plaintiff's motion to amend to name Ms. Rediske, another citizen of Indiana, as a defendant, which, if granted, would deprive the court of that jurisdiction and require remand.

## Analysis

28 U.S.C. § 1447(e) provides: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

In *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752 (7th Cir. 2009), the Seventh Circuit has directed district courts to consider four factors when faced with a section 1447(e) analysis. A court's decision whether or not to allow joinder is made with consideration to "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable consideration." *Id.* at 759.

## I. The Analytical Framework for the Court's Decision

Most cases involving a *Schur* analysis concern a plaintiff who wishes to add a non-diverse party after removal to federal court. That circumstance is not present here because Mr. Nyamazana's original complaint named the individual he believed was the manager of the apartment complex. Mr. Nyamazana had every right to include a claim against a non-diverse party in his original complaint. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) ("plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum"). Without his mistake as to the identity of the manager, amendment would not have been required.

Because of the procedural anomaly of this case, the parties agree – and the court concurs – that the court's decision turns on analyzing whether Ms. Rediske's joinder would be fraudulent. Indeed, other than arguing that the plaintiff should not be permitted to amend because of fraudulent joinder principles, Belgarde does not suggest any other reason for denying the plaintiff's motion. The *Schur* analysis in this case thus collapses into a fraudulent joinder inquiry only and the court will evaluate the plaintiff's claim against Ms. Rediske under that rubric. *Schur,* 577 F.3d at 764 ("If a defendant can carry the 'heavy burden' of proving fraudulent joinder, this would counsel against joinder.")

## II. The Doctrine of Fraudulent Joinder

To prevail on an assertion of fraudulent joinder, Belgarde must convince the court that, "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992) (emphasis in original). The court must ask if there is "any reasonable possibility" that a court could rule against the non-diverse defendant based on the state law governing the plaintiff's claim. *Schur,* 577 F.3d at 763-64. *See also Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir. 1993) ("Fraudulent joinder occurs . . . when there is no possibility that a plaintiff can state a cause of action against non-diverse defendants . . . .") As the Seventh Circuit has noted, the defendant faces a heavy burden and the burden may be said to be "even more favorable to the plaintiff than the standard that applies to a motion to dismiss" under Fed. R. Civ. P. 12(b)(6). *Id. T*he court will first describe

4

the plaintiff's factual allegations with respect to Ms. Rediske and then address the governing substantive law.

### A. The plaintiff's allegations against Ms. Rediske

Mr. Nyamazana alleges that Ms. Rediske[2] (a) was the general manager of the apartment complex at the time of the plaintiff's injury; (b) was "in charge of the premises and the swimming pool" that day; (c) was negligent in her duties in the management of the swimming pool; and (d) was negligent because she closed and locked the management office while allowing the pool to remain open at the time the plaintiff's injury occurred, allegedly in violation of Indiana safety codes requiring the accessibility of a telephone in proximity to a pool. The required telephone was located in the closed and locked management office. The plaintiff contends that the lack of access to a phone contributed to his injuries by delaying the arrival of emergency responders. (Dkt. 1-1, Count II and Dkt. 18 at pp. 6-7).

### B. Applicable law

The Indiana Supreme Court has set out three elements a plaintiff must establish in order to prevail on a negligence claim:

> (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required

---

[2] These allegations are set forth in the complaint (assuming the allegations against Ms. Rediske are the same as those against Ms. Youell) and further expanded upon in the briefing accompanying the motion. The court may look to the plaintiff's factual assertions in his motion that elaborate on the allegations in the complaint so long as the allegations are not inconsistent with the complaint. *Conk v. Richards & O'Neil, LLP*, 77 F.Supp.2d 956, 961 (S.D. Ind. 1999); *see also Chaney v. Suburban Bus Div. of Regional Transp.*, 52 F.3d 623, 626-27 (7th Cir. 1995); *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 78-79 (7th Cir. 1992).

> by the relationship, and (3) an injury to the plaintiff proximately caused by the breach.

*Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

Belgarde argues that Mr. Nyamazana has no possibility of success against Ms. Rediske because he cannot establish the first element: that she owed a duty to Mr. Nyamazana under Indiana law. Belgarde approaches the duty question from three different angles that the court will likewise address separately. But they can all be distilled to the single proposition that Indiana law does not impose a duty under the facts alleged. Belgarde's first line of argument focuses on premises liability cases. It then contends that Ms. Rediske owed no duty to Mr. Nyamazana independent of her employment relationship with Belgarde. Belgarde further claims that the allegations in Mr. Nyamazana's complaint amount to mere nonfeasance, as opposed to misfeasance, and that a plaintiff cannot hold an employee liable for failure to perform duties in the scope of her employment.

(1) Premises Liability Principles

As a preliminary matter, Belgarde points to principles of premises liability in support of its argument that Ms. Rediske owed no duty to Mr. Nyamazana, but they are largely irrelevant to the question presented here. Many of the cases cited have nothing to do with causes of action against an agent or employee. *Parojcic v. Bethlehem Steel Corp.*, 128 F.3d 601 (7th Cir. 1997) (employee sued his employer for an injury sustained while working at a steel plant); *Get-N-Go, Inc. v Markins*, 550 N.E.2d 748 (Ind. 1990) (slip and fall case brought by a customer against a convenience store); *Rhodes v. Wright*, 805 N.E.2d 382 (Ind. 2004) (suit against a

landowner for failure to light a loading dock and creating a dangerous condition); *Crist v. K-Mart Corp.*, 653 N.E.2d 140 (Ind. Ct. App. 1995) (suit against K-Mart for injuries sustained by plaintiff while delivering merchandise to the store); *Del Signore v. Asphalt Drum Mixers*, 182 F.Supp.2d 730 (N.D. Ind. 2002) (suit against Asphalt Drum Mixers only based on an employee's gratuitous assumption of a duty).

        (2)     Duty Independent of the Employment Relationship

Citing *Tippecanoe Loan & Trust Co. v. Jester*, Belgarde argues that an agent may be held liable to a third party only where the agent has a duty to the third party that is independent of his employment relationship. The court, however, reads that case differently. The Indiana Supreme Court stated:

> That is to say, that for failure to perform his contractual obligations to his principal, a third person cannot hold him liable, but for negligence of omission or commission, after he has undertaken performance, he is liable under common–law rules. The violation of a duty giving rise to injury and a cause of action arises as much, and as frequently, from omission to do a thing which ought to be done in the discharge of his duty to his principal, nonfeasance, as in doing it in the discharge of that duty, in such a manner as to injure another, misfeasance.

*Tippecanoe Loan & Trust Co. v. Jester*, 101 N.E. 915, 920 (Ind. 1913). In other words, a third party has no claim against an agent based solely on the agent's failure to carry out his obligations to his principal, but an agent can be liable if he violates his common law duty "to use that which he controls as not to injure others." *Id*. at 919. If an agent acts negligently and injures another, he may be liable whether or not the negligent acts were in commission or omission of his duties to his employer. *Id.* In fact, the court in *Tippecanoe* found the allegations set forth in

7

the plaintiff's complaint were sufficient to state a claim against the agent. *Id.* at 920.

Mr. Nyamazana is not suing Ms. Rediske because she failed in her duties to Belgarde. Rather, he alleges that Ms. Rediske injured him through her negligent management of the pool and office area. The complaint provides no indication—because in all likelihood Mr. Nyamazana does not yet know—that Ms. Rediske failed in the discharge of her duties to Belgarde. Perhaps she did exactly what Belgarde had instructed her to do. Mr. Nyamazana claims that Ms. Rediske had a common law duty not to injure him by her conduct and that she breached that duty by closing the management office with telephone access. *Tippecanoe Loan & Trust Co.* does not foreclose a claim against Ms. Rediske.

Belgarde also relies on *Nagaraja v. Target*, Cause No. 2:06-CV-138-PPS-PRC (N.D. Ind., Oct. 31, 2006).[3] in which the joinder of the non-diverse employees of Target was found fraudulent because the only allegations offered in the complaint were that the employees were employed by Target at the time of the accident. Mr. Nyamazana has alleged more than mere employment. He contends that Ms. Rediske's management decisions directly contributed to his injuries. "[A]n agent who commits a tortious act is equally liable with the principal." *Indiana Dep't. of*

---

[3] The *Nagaraja* decision is not available on Westlaw or Lexis-Nexis but is accessible via PACER. Belgarde should have attached a copy of the decision to its brief. S.D. Ind. L.R. 7-1(f).

8

*Transp. v. McEnery,* 737 N.E.2d 799, 802 (Ind. Ct. App. 2000). "The agent cannot escape liability on the ground that he acted for a principal." *Id.*[4]

Belgarde next cites to *Schwartz v. State Farm Mut. Auto Ins. Co.,* 174 F.3d 875 (7th Cir. 1999). That court found joinder of a non-diverse employee of State Farm fraudulent because there was no cause of action against the employee and, as such, there was no reasonable possibility of success. *Id.* at 879. The plaintiff in that case was attempting to hold the insurer's employee individually liable for the insurer's bad faith denial of an insurance claim. *Id.* Our Court of Appeals found that the insurer's employee owed no independent duty to the plaintiff outside of his relationship with his employer that would give rise to a bad faith tort claim. *Id.* With regards to bad faith denials of insurance claims, "the duty arises from the 'unique character of the insurance contract' itself." *Id.* The insurer's employee was not a part of the insurance contract and was not in privity with the plaintiff. *Id.* Because the duty arose from the contract, the employee, who was not in privity, could not have owed a duty to the plaintiff. *Id.*

Mr. Nyamazana is not alleging bad faith; he is alleging negligence. To recover under a negligence theory, he need only establish "a duty on the part of the defendant to conform [her] conduct to a standard of care arising from [her] relationship with the plaintiff . . . ." *Webb,* 575 N.E.2d at 995. Mr. Nyamazana maintains that a duty arose between him and Ms. Rediske because as manager of the pool, she was under a duty to manage the pool so as not to injure pool users.

---

[4] Potential questions of comparative fault or indemnity are beyond the scope of this analysis.

This court cannot conclude at this stage of the case that there is no reasonable possibility that Mr. Nyamazana could establish such a duty on the part of Ms. Rediske.

(3) Nonfeasance v. Misfeasance

In urging lack of duty, Belgarde also characterizes the allegations against Ms. Rediske as nothing more than nonfeasance. Belgarde's argument hinges on a legal distinction between nonfeasance and misfeasance. Some Indiana courts have held that "when a defendant's alleged negligence arises from nonfeasance, the complete omission or failure to perform, as opposed to misfeasance, negligent conduct or active misconduct, then the duty to act must arise from a special relationship between the parties." *J.A.W. v. Roberts*, 627 N.E.2d 802, 809 (Ind. Ct. App. 1994); *see also Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 770-71 (Ind. Ct. App. 1986).

Whether this distinction remains viable under Indiana law is unclear. Following the Indiana Supreme Court's decision in *Webb v Jarvis*, one Indiana appellate court has said it is not. *Holt v. Quality Motor Sales, Inc.* 776 N.E.2d 361, 366 (Ind. Ct. App. 2002). The Indiana Supreme Court has noted another post-*Webb* decision that continued to make the distinction, but the state Supreme Court found it unnecessary to resolve the split among the appellate courts. *See Estate of Mintz v. Connecticut General Life Ins. Co.,* 905 N.E.2d 994, 1000 (Ind. 2009) (citing *Holt* and *J.A.W. v. Roberts*).

In any event, it is not necessary or appropriate for this court to predict whether the Indiana Supreme Court will continue to recognize a distinction between nonfeasance and misfeasance. That court did not deem it necessary to resolve the issue even on a fuller factual record at the summary judgment stage, and this court should not resolve it at the pleadings stage where Belgarde must demonstrate that Mr. Nyamazana has no reasonable possibility of success. Moreover, Belgarde's characterization of the allegations as "nonfeasance" appears at this stage to be a semantic manipulation as opposed to a clear substantive description.

(4) Negligence of employee/agent

The question presented here is similar to that raised in *Van Swol v. ISG Burns Harbor, LLC,* 491 F.Supp.2d 807 (N.D. Ind. 2007). Van Swol originally sued the ISG steel mill in state court, alleging its negligence after he was struck and dragged by a train car. *Id.* at 809. Once the plaintiff discovered the identity of the employee of the mill in control of the train car at the time of his accident, he amended his complaint to allege that the employee's negligence in his operation of the locomotive created a dangerous condition that contributed to the plaintiff's injuries. *Id* at 809-10.

ISG asserted that Van Swol had no reasonable possibility of success against the employee because there was no basis in Indiana law to hold the employee individually liable, thus making joinder of the employee fraudulent for purposes of

diversity jurisdiction. *Id.* at 812. ISG claimed the employee had no duty to Van Swol "independent of his employment relationship with ISG." *Id.*

The court, however, held, "Claims based upon the active negligence of a principal, the agent, or both the principal and agent clearly have support under Indiana law." *Id.* (citing *McEnery,* 737 N.E.2d at 802; *Howard Dodge & Sons, Inc. v. Finn*, 391 N.E.2d 638, 641 (Ind. Ct. App. 1979)). The court could not find that the plaintiff had no reasonable possibility of success against the employee. Such is the case here.

This order should not be read to hold that Mr. Nyamazana *does* have a viable claim against Ms. Rediske, nor that the evidence will ultimately permit a jury to find in his favor on that claim. Rather, the court determines at this early pleadings stage that Belgarde has not demonstrated that the allegations of the complaint lead inescapably to the conclusion that Mr. Nyamazana has no claim against Ms. Rediske that Indiana law would countenance. For that reason, leave to amend is GRANTED, and this case will be, upon amendment, REMANDED to the Marion Superior Court.

## Conclusion

Plaintiff Nyamazana's motion for leave to file an amended complaint (Dkt. 17) is GRANTED. Mr. Nyamazana must file his amended complaint within seven days of the entry of this order. Upon the filing of the amended complaint, the court will enter an order remanding this case to the Marion Superior Court.

**So ORDERED.**

**Date:** 07/09/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**